Mr. Sigel, good morning. MR. SIGEL Good morning, Your Honors. Let me please the Court. The Arizona residential discharge statute is probably one of the most quintessential examples of an extremely broadly worded statute which criminalizes conduct which exceeds and exceeds Section 2L1.2's crime of violence definition. And under a Taylor categorical analysis, clearly does not warrant the 16-level enhancement. JUSTICE GINSBURG Mr. Sigel, may I ask you one question? If I understand where the circuit is presently, a statute is a crime of violence, categorically, when the firearm is discharged at a dwelling that is occupied but not necessarily presently occupied. MR. SIGEL Correct. Well, the distinction — oh, I'm sorry. JUSTICE GINSBURG Yeah. Now, my question, though, you can say whatever you want to with respect to it, but just let me get my question out. My question is that under Arizona law, the residential structure must be adapted for use by a person as a place of habitation. So what is the difference between a building that is occupied but not necessarily presently occupied and one that is adapted for occupation by a person as their house? MR. SIGEL That's a good question. I believe what the distinction that this Court has made in Cortes Arias is it held that it was a crime of violence where the house was currently and permanently being resided in, which does include if the resident is temporarily absent. The question really was in Cortes Arias, in view of the fact that the resident can be absent when the weapon is discharged, does that necessarily require that the use of force is threatened against the person when the person can be absent? Arizona's and the Court held, yes, it can be, this Court held it can be, and that was because a person who is currently and permanently living at that residence, inhabiting that residence, will necessarily feel threatened when they come home to their home, which has been shot up. Kagan. From the point of view of the person who is discharging the firearm, what's the difference between the two structures? Because on the one hand, one, the person isn't there actually to get shot, but the discharger doesn't know that. And on the other hand, the house has been adapted for use, and somebody may or may not be living there at the moment, which the shooter doesn't know. MR. SIGEL I would suggest that because the definition of crime of violence requires as an element the threatened use of force against the person of another, that it is not just the perspective of the discharger which is relevant, but more importantly, the status of the structure that's being shot at. In Arizona, that structure need only be adapted for residence, which means essentially suitable for residence. And the cases that I've cited in the brief show that that can also be adapted for residence. apply to homes which have been, for instance, fitted for electricity, plumbing and so forth, but nobody is living there. Therefore, there is no one there who will come home who will necessarily perceive the threat to that person. There is simply no requirement in Arizona of a current and permanent residence. Moreover, the definition of residential structure is so broadly defined to include any space which has four walls and a floor that it literally can be adapted for residence, that it can literally include a seasonal cabin which is used for a week during the year. It can include a tent or, by the terms, very terms of the statute, a railroad car which is being used by someone to live in or which has been adapted for use. And that does not mean that a person is living there. So Arizona does have a statute which does address, I believe, what the Court's their drive-by statute. That is specifically addressed, addresses where an individual where the home is being, where the structure is actually resided in, which is parallel to California's statute. You have another different question, and that is that, as I understand it, Arizona Decisional Law, as well as its statutory law, says that you really start with the question is the structure residential or non-residential, and non-residential is defined as commercial. So the question, I guess, is if this isn't commercial, it must be residential. Common sense says what residential is. I mean, it's not commercial. So where do you fit that into your analysis? What I would suggest is that Arizona has not defined residential in a common sense way. Arizona has defined it as suitable for or adapted for residence, which means Arizona courts will find that a case, a structure, is it a residential structure even where a person is not there, is not currently living there. And the critical distinction is that is the critical distinction, because under Cortez, Arias, and Lopez-Torres, what makes it a crime of violence, what makes it necessarily involve an element of the threatened use against the person of another, is that there's somebody going to be coming back there. But the language of the statute, though, is that it's already been adapted for residential use or lodging. Is adapted for. Right. So it's already presumed under the statute that the defendant pled guilty to is that he was shooting at a residence that was adapted for such purposes. I believe that the statute is adapted for, and I believe that is also the indictment simply parrots the statutory language. Let me ask you something else. On the same day, the same charging document that the defendant pled guilty to the shooting, the discharge of the firearm, he also pled guilty to causing substantial risk of death to an individual. By looking at those documents, isn't it logical for us to assume that those two are related? It might be one logical inference, but it's certainly not the only inference. There is no cross-referencing between the two different charges. So there is no discussion, for instance, that the residential discharge involved the person who was the subject of the endangerment, and vice versa. In the endangerment, there's no specification of the address. If I might reserve just a few minutes, a few seconds, please. Ms. Berenger. Good morning, Your Honor. May it please the Court, Elizabeth Berenger, Assistant U.S. Attorney on behalf of the United States. The district court here properly found that the defendant's Arizona conviction for discharging a firearm at a residential structure was a categorical crime of violence. The issue in this case is whether Arizona's definition of a residential structure renders it outside the crime of violence definition. And Cortez R.E.S. holds that this statute is pretty much the exact same statute in Cortez R.E.S., but shooting an instrument of deadly force at a residential structure or a ---- But the difference is that the California statute required the structure to be occupied, whether or not the occupant was occupying the occupied residence at the time. Arizona does not. So someone, so a house that's been, that is usable, isn't necessarily used as a place of residence. Well, there's two responses to that. First, Cortez R.E.S. doesn't define the outer limits of what a crime of violence is. It said that the California statute was sufficient to meet the crime of violence definition, so it doesn't have to be exactly the same. And second of all, the statutes are pretty much saying the same thing. Well, let's take an example. Let's say that you have some spec houses constructed in a subdivision, clearly not inhabited. And there's a sign that says, will be offered to the public in the near future. Under your theory, if you fire a firearm at any of those structures, it's a categorical violation. It categorically qualifies, I should say. Correct? I think we can always come up with examples that take us to the fringe elements. But the heart of this offense is ---- But that's the definition of categorical, isn't it? It is the definition of categorical. But the ---- So how is it a crime of violence if you are shooting at what is concededly an unoccupied structure that has been adapted for human use? Well, first of all, the California statute, they allowed absences of up to two and a half years. And this Court still found that that was a categorical crime of violence based on the defendant's conduct of shooting a gun into a residence. Go ahead. No, no, please. Well, that's because the house was, in fact, owned by somebody. There was a person who would be affected by the shooting of that dwelling. But the fear, the concern about their home being shot, whether they were there or not, it was their home. The concern I have is that the Arizona statute provides for a home that is simply or a residence that's adapted for residential purposes but may not be anybody's home. And then who is it that would be in fear if that residence was shooting? It's much like the target shooting that was raised in the legislative history. Well, what we're really talking about here is the sanctity of your home and the whole purpose of why the Arizona legislature protected a residence in this case. The fact that it's adapted for use in residence as a home means there's going to be people living there. Whether it's a homeless person that finds them an abandoned home or someone, the whole purpose is to protect the type of people who are living in homes. But you would agree that the statute would also apply to a place that was not adopted by a homeless person or anybody else for that matter, that was simply built, fully furnished, but not anybody's home. The statute would apply to that as well, correct? It's unclear whether the statute does or not. All we have right now is we don't have any case law really discussing that type of example. The type of examples we're talking about are people living inside homes. The legislative history shows that they're concerned about protecting the sanctity of home, protecting the occupants inside the home. In Gerber and Gardella, it's to carve out special protection for those residents where an intruder is likely to discover an occupant and thus produce fear or violent confrontation. The whole purpose of the statute is to protect residents inside homes. It's not to protect abandoned model homes. Why would they prescribe special punishment for a model home over a nonresidential business? It's just because of the sanctity of the home. I'm curious at your suggestion that Cortez Areas is somehow not necessarily the final word on this. If the Court were to expand Cortez Areas or the definition there under, what limit would you suggest that we place? I would be hesitant to do that without the Solicitor General's approval. But as far as the great quote in Cortez Areas, which is pretty much the heart of this statute, is a person whose home is shot up by an instrument of deadly force, even though that person may have been absent at the time of the shooting, will surely feel threatened by the physical force that has intruded on his or her home. And I think that that is the central holding of Cortez Areas. And it doesn't necessarily say that the California statute is the outer limit of what we're going to decide a crime of violence is. The Arizona statute doesn't have to meet exactly the California statute. So the central holding is the Cortez Areas, but necessarily the facts of the California statute would have been a better phrasing. Let me ask you a question. Under the modified categorical approach, would it have been okay for the government at sentencing to have asked the court to take judicial notice of, for example, a telephone directory that shows that the residents at whatever it is, Heather Drive, I can't remember, 5977 Heather Drive, was identified with a particular person? Perhaps that would have been a better strategy of the government, but obviously that's not the facts here. Well, I'm not really wondering about strategy so much as I am whether that would be appropriate. I mean, the difficulty with this case is it absolutely requires one to leave one's common sense somewhere way outside the courthouse, which is something we're kind of used to doing. But nevertheless, it's a little difficult. And we know that this was occupied. We know that there were a ton of people around, and yet we can't act on it. So I'm just curious how far you would push or you think the categorical approach is capable of being pushed. Well, Your Honor, I think there is enough in the documents to show. I mean, he was convicted of the events on the same day, both involved the danger to the victim. I think the court can find under both the categorical and modified categorical approach that this was a crime of violence. The district court didn't reach the modified categorical approach, though, did it? No, Your Honor. Wouldn't the proper course be if we decided that this was not a categorical crime of violence to remand for resentencing, and the court could then consider whether or not the modified categorical approach applied? Well, there is enough here to find under the categorical approach that this was discharging a firearm at a resident. I'm sorry, you're answering a different question than the one I asked. Could you repeat the question? Yes. I said if we were to disagree with you and hold that this the Arizona statute did not qualify categorically as a crime of violence, wouldn't it be more appropriate to remand the question to the district court, vacate for resentencing, so the district court in the first instance could consider whether or not the modified categorical approach would apply? Certainly, if the court didn't feel this was a categorical crime of violence. So again, the residential structure under Arizona law is pretty much the same thing as an inhabited dwelling under California law. Both don't have to be occupied at the time. There can be temporary absences of both. Again, People v. Marquez allowed an absence of two and a half years, and the court in Cortez-Arias still found that it was a categorical crime of violence. But you wouldn't expect this Court to bootstrap the California decisions interpreting its statute and imply that that somehow allows the outer limits of a crime of violence for our purposes. I mean, the Cortez-Arias clearly focused on the occupied nature of the residential building, and that that was required at least at that time in the interpretation by the California courts for the California statute. We can't, certainly we can't allow a more permissive interpretation under California courts to drive this Court's outer limits of what is or what is not a crime of violence. Well, Your Honor, I presume that the panel in the Ninth Circuit was aware of all of the California case law when it decided that this statute was categorically a crime of violence. So they were presumably aware of People v. Marquez, which allows a two and a half year absence when they decided that case. It was decided before Cortez-Arias was decided. Again, the legislative history shows the statute was aimed at protecting homes, exactly what Judge Reimer is saying. We know what the statute is really going after. We know what it's prohibiting. It's prohibiting the shooting at places where people are living. It's not concerned with these bizarre, absurd hypotheticals of shooting at model homes. There are plenty of other statutes under Arizona law that would prohibit that kind of activity, such as shooting within a city residence, things like disorderly conduct. Those types of statutes are meant to prohibit the random shooting at things where people aren't living. If there aren't any further questions, we would just ask that the judgment in this sentence be affirmed. All right. Thank you, Ms. Berenger. Mr. Siegel. With respect to two points, Your Honor, I would, Your Honors, I would suggest that if the Court were to affirm the enhancement here, it would be to extend Cortez-Arias to basically the broadest type of residential discharge statute that there is, because in Arizona, there is no requirement of a current resident, a permanent resident. What Ms. Berenger just pointed out was that the purpose of the statute was to protect the person whose home is shot at and, in her words, shooting where people are living. The Arizona statute specifically includes homes where people are not living. That's the point. I'm not sure where she pulls that out of. Second, with respect to the categorical of modified categorical approach, there simply were no documents in the record which were considering categorical or modified categorical approach. And what it stated on the record was that it considered looking at the police reports and the reports contained in the pre-sentence report, there was no question that the person that it was the structure was occupied, which is clearly something that's not allowed under Shepard. Thank you, Mr. Siegel. Your time has expired. Thank you, counsel. The matter just argued will be submitted.
judges: Rymer, Thomas, Larson